VINCENT GAMBARDELLA AND HELEN GAMBARDELLA, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Gambardella v. Commissioner
Docket No. 30130-83.
United States Tax Court
T.C. Memo 1985-540; 1985 Tax Ct. Memo LEXIS 91; 50 T.C.M. (CCH) 1331; T.C.M. (RIA) 85540; October 23, 1985. Vincent Gambardella, pro se. Roland Barral, for the respondent. TANNENWALD
MEMORANDUM FINDINGS OF FACT AND OPINION TANNENWALD, Judge: Respondent determined deficiencies in petitioners' Federal income tax as follows: Additions to Tax
Taxable Year Ended
Deficiency
Sec. 6653(a)(1) [1]
Sec. 6653(a)(2)
December 31, 1980
$2,138.00
$106.90
December 31, 1981
4,138.00
206.90 *
The issues for decision involve deductions for charitable contributions in both taxable years, *92 for a casualty loss in 1981, and the additions to tax under section 6653(a). The burden of proof as to all issues is on petitioners. Welch v. Helvering,290 U.S. 111 (1933); Rule 142(a). As a matter of convenience, we have conbined our findings of fact and opinion. Some of the facts have been stipulated and are found accordingly. Petitioners are husband and wife and resided in Staten Island, New York at the time they filed their petition herein. They filed timely Federal income tax returns for the years at issue with the Internal Revenue Service in New York, New York. Petitioner husband received a document, dated August 18, 1980, certifying that he had been ordained as a minister of the Universal Life Church. Petitioners also received a document which certified that a Congregation of the Universal Life Church, Inc. (ULC) [2] was started on August 18, 1980 at an address which was the address of petitioners' home. Petitioners issued checks payable to the ULC in the amounts of $6,190 in 1980 and $13,634 in 1981. The funds represented by these checks *93 were deposited in a local bank account at the Gateway State Bank in Staten Island, New York over which petitioners had signature authority and control. The funds in this account were used to pay personal expenses of petitioners relating to petitioners' home such as mortgage payments, utilities, telephone, furnishings, as well as for some food expenses of petitioners' family. Petitioners have not shown that their position is any different from numerous other cases involving contributions to the ULC in which taxpayers failed to prove that the deductions claimed by them represented qualified charitable contributions. It is clear from the record herein that, although petitioners' checks were payable to ULC, they cannot be said to have been contributions other than in name to the mother church in Modesto. [3] Nor does the evidence of record permit the conclusion that the local congregation of the ULC purportedly established by petitioners could qualify for tax-exempt status, especially in light of the fact that the funds represented by the ULC contributions were used to defray petitioners' personal expenses. Davis v. Commissioner,81 T.C. 806, 816-819 (1983), affd. by *94 court order 767 F.2d 931 (9th Cir., June 24, 1985).[4] Petitioners' assertion that they should be allowed the claimed deductions because they complied with the rules and regulations of the mother church in Modesto is without merit. [5]
As to the other charitable contributions, petitioners claimed $1,595 in 1980 and $697 in 1981 of which respondent allowed on audit $400 and $150, respectively. After considering all the evidence, in particular, cancelled checks to recognized charities, we have concluded that petitioners should be allowed the following *95 additional amounts: (a) For 1980, a total of $50, consisting of $25 for contributions by check to qualified exempt organizations and $25 for the contribution of property to the Roman Catholic Church of the Holy Child. (b) For 1981, a total of $88, consisting of $73 contributions by check to qualified exempt organization and $15 for the contribution of property to the Roman Catholic Church of the Holy Child. Petitioners have failed to carry their burden of proof that they are entitled to any further deductions for charitable contributions. With respect to the casualty loss in 1981, petitioners have simply failed to carry their burden of proof that the cause of every element of the loss was a "casualty" within the meaning of section 165(c), or the amount thereof; in any event, to the extent that there may have been a casualty loss, the amount thereof was not in excess of the $100 exclusion. Finally, petitioners had the burden of proof as to the additions to tax under section 6653(a). Bixby v. Commissioner,58 T.C. 757, 791-792 (1972). They have failed to carry that burden. See Bell v. Commissioner, 85 T.C.     (Sept. 5, 1985). To reflect the additional *96 adjustments set forth above, Decision will be entered under Rule 155.
Footnotes
1. All section references are to the Internal Revenue Code of 1954, as amended, and in effect during the years in issue. All Rule references are to the Tax Court Rules of Practice and Procedure. * To be based on an underpayment of $4,138.00.↩
2. Both documents stated that the Universal Life Church, Inc. had its headquarters in Modesto, California.↩
3. The Universal Life Church, Modesto, had tax exempt status during 1980 and 1981, which status was revoked on September 4, 1984. See Universal Life Church, Inc. v. United States,372 F.Supp. 770 (E.D. Cal. 1974); Announcement 84-90, 1984-36 I.R.B. 32↩. 4. See also Morgan v. Commissioner,T.C. Memo. 1985-280↩. 5. Considering all the evidence that was made available or conceivably might have been made available, we are unable to determine that petitioners were in any way prejudiced by this Court's denial of petitioners' request that the trial be held in San Francisco.↩